

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>MYRNA M. HERRERO,<br><br>        Debtor. | Case No. 10-02991<br>Chapter 7 |
| RICHARD A. YANAGI, Chapter 7 Trustee; and FREDRICK A. MENDOZA,<br><br>        Plaintiffs,<br><br>    vs.<br><br>BANK OF AMERICA, N.A., JOEL BRANDON VILLAMOR, JULIA KELLY, PROSPECT MORTGAGE, LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and DOE DEFENDANTS 1-50<br><br>        Defendants. | Adv. Pro. No. 21-90005<br><br>Dkt. 10, 18, 19 |

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION TO DISMISS

In this adversary proceeding, Plaintiffs Richard A. Yanagi, as trustee of the chapter 7 bankruptcy estate of Myrna M. Herrero, and Fredrick A. Mendoza assert claims against two groups of defendants: Counts I and II state claims against Bank of America, N.A. ("BANA") and Mortgage Electronic Registration Systems, Inc. ("MERS"), and Count III states claims against Joel Brandon Villamor, Julia Kelly, and Prospect Mortgage, LLC ("the QTE Defendants"). The Plaintiffs' claims arise out of the allegedly wrongful nonjudicial foreclosure of real property belonging to Ms. Herrero and Mr. Mendoza (the "Property").

BANA and MERS move to dismiss the complaint, arguing that the Plaintiffs' claims are untimely under the applicable statutes of limitations, that the mortgage held by MERS has been released, and that the Plaintiffs have not proven their ability to tender the amount of the indebtedness on the real property, which is required to state a claim for wrongful foreclosure.

2

For the reasons described below, I will GRANT the motion in part and DENY it in part.

I. **BACKGROUND**[1]

A. **Foreclosure**

Ms. Herrero and Mr. Mendoza owned real property in Eleele, Hawaii. In August 2009, the mortgage on their property was assigned to BAC Home Loans Servicing, L.P ("BAC"). On June 24, 2010, BAC purportedly conducted a public auction of the Property.[2] BAC submitted the highest bid at the June 24 auction as a credit bid on behalf of the Federal National Mortgage Association ("Fannie Mae"), which held a beneficial interest in the note and mortgage.[3]

On July 9, 2010, BAC's attorney executed a Mortgagee's Affidavit of Foreclosure Under Power of Sale pertaining to the foreclosure of the

---

[1] The facts recited below are mostly taken from the complaint, the allegations of which I must accept as true for purposes of this motion. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

[2] Compl. ¶ 36, ECF No. 1.

[3] *Id.* ¶ 47.

3

mortgage and sale of the Property.[4] The foreclosure affidavit was recorded

in the Bureau of Conveyances on July 19, 2010.[5] On July 27, 2010, BAC

executed a "Mortgagee's Quitclaim Deed Pursuant to Power of Sale"

conveying the Property to Fannie Mae.[6] On August 6, 2010, the quitclaim

deed was recorded.[7]

In July 2011, BAC merged into BANA and BANA assumed all of

BAC's obligations and liabilities existing at the time of the merger.[8]

The Property changed hands several times until it was finally

conveyed to Defendants Villamor and Kelly by warranty deed on February

19, 2016.[9] On February 20, 2016, Mr. Villamor and Ms. Kelly executed a

mortgage on the Property in favor of MERS.[10] On March 15, 2021, a Release

of Mortgage was recorded whereby MERS acknowledged full payment and

---

[4] *Id.* ¶ 43.
[5] *Id.*
[6] *Id.* ¶ 46.
[7] *Id.*
[8] *Id.* ¶ 10.
[9] *Id.* ¶ 52.
[10] *Id.* ¶ 53.

4

satisfaction of the mortgage.

B.    **Bankruptcy Case and *Degamo* Class Action**

On September 29, 2010, Ms. Herrero filed her chapter 7 bankruptcy petition. She did not list claims against BANA in her bankruptcy schedules.[11] On December 28, 2010, she obtained a chapter 7 discharge and her case was closed.[12]

Ms. Herrero was allegedly a class member in a putative class action entitled *Degamo v. Bank of America, N.A.*, filed in state court on September 7, 2012[13] and removed to federal district court on March 25, 2013.[14] The plaintiffs in *Degamo* asserted claims against BANA for wrongful nonjudicial foreclosure in violation of Haw. Rev. Stat. § 667–5 and unfair or deceptive acts or practices or unfair methods of competition under Haw.

---

[11] *See* Debtor's Schedules, ECF No. 1 in main bankruptcy case.

[12] Discharge of Debtor, ECF No. 10 in main bankruptcy case; Final Decree, ECF No. 11 in main bankruptcy case.

[13] Compl. ¶ 18, ECF No. 1.

[14] Def.'s Notice of Removal, *Degamo v. Bank of Am., N.A.*, No. 1:13-cv-00141-JAO-KJM (D. Haw. Mar. 25, 2013), ECF No. 1.

5

Rev. Stat. chapter 480.[15] MERS was not a defendant in the class action.

On September 22, 2017, one of the named plaintiffs, Milagros Juan Degamo, was dismissed from the class action.[16] The court dismissed the *Degamo* class action with prejudice on March 14, 2019, because the remaining named plaintiffs lacked prudential standing as a result of prior bankruptcy filings.[17]

On December 31, 2020, Ms. Herrero moved to reopen her chapter 7 case to add her claim against BANA and others arising from the nonjudicial foreclosure sale to her bankruptcy schedules.[18] I entered an order granting the motion on January 4, 2021,[19] and Richard A. Yanagi was appointed as the chapter 7 trustee on January 7, 2021.[20]

---

[15] First Am. Compl. ¶ 46, *Degamo*, No. 1:13-cv-00141-JAO-KJM (D. Haw. Apr. 23, 2013), ECF No. 14.

[16] Stip. Dismiss Pl. Degamo's Claims, *Degamo*, No. 1:13-cv-00141-JAO-KJM (D. Haw. Sept. 22, 2017), ECF No. 76.

[17] Order Denying Pls' Mot. Accept Ratification or Permit Substitution and Renewed Mot. for Leave to File Second Am. Compl, *Degamo*, No. 1:13-cv-00141-JAO-KJM, 2019 U.S. Dist. LEXIS 41608, at *23 (D. Haw. Mar. 14, 2019), ECF No. 147.

[18] Mot. Reopen Ch. 7 Case, ECF No. 13 in main bankruptcy case.

[19] Order Granting Mot. Reopen, ECF No. 14 in main bankruptcy case.

[20] Notice of Appointment of Successor Trustee, ECF No. 21 in main bankruptcy

C.     **The Adversary Complaint and Motion to Dismiss**

Mr. Mendoza and Trustee Yanagi filed their adversary complaint, commencing this proceeding, on February 9, 2010.[21] Count I of the complaint alleges that BANA's foreclosure of the Property did not comply with section 667–5 and the power of sale in the mortgage.[22] Count II alleges that BANA engaged in unfair and deceptive trade practices ("UDAP") and unfair methods of competition ("UMOC") in violation of Haw. Rev. Stat. chapter 480.[23] Count III is a claim for quiet title and ejectment against the QTE Defendants.

On March 22, 2021, BANA and MERS filed this motion, arguing that the complaint should be dismissed under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b).[24] The remaining QTE Defendants joined in the motion on March 24, 2021.[25] The motion came for hearing on

---

case.

[21] Compl., ECF No. 1.
[22] *Id.* at ¶ 67.
[23] *Id.* at ¶¶ 80-89.
[24] First Am. Mot. Dismiss Compl., ECF No. 10.
[25] Joinder in Am. Mot. Dismiss. Compl., ECF No. 11.

U.S. Bankruptcy Court - Hawaii   #21-90005   Dkt # 23   Filed   07/28/21   Page 7 of 44

May 14, 2021. Van-Alan H. Shima appeared for the Plaintiffs and Patricia J. McHenry appeared for BANA and MERS.

## II. STANDARD

### A. <u>Rule 12(b)(6) Standard</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"[26] "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"[27] When ruling on a rule 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true.[28]

The key is whether the allegations are well-plead; a court is not bound by conclusory statements, statements of law, or unwarranted

---

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[27] *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 573 (B.A.P. 9th Cir. 2011) (quoting *Johnson v. Riverside Healthcare Sys., L.P.*, 534 F.3d 1116, 1121 (9th Cir. 2008)).

[28] *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

inferences cast as factual allegations.[29] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[30]

B.     **Statutes of Limitations and Tolling Based on State Law**

A federal court hearing claims under state law applies the substantive law of the state, including the state's statute of limitations.[31] "Federal courts must abide by a state's tolling rules, which are integrally related to statutes of limitations."[32]

"When interpreting state law, federal courts are bound by decisions of the state's highest court. 'In the absence of such a decision, a federal court must predict how the highest state court would decide the

---

[29] *Belice*, 461 B.R. at 573.

[30] *Id.*

[31] *See Albano v. Shea Homes Ltd. Partnership* 634 F.3d 524, 530 (9th Cir. 2011).

[32] *Id.*

9

issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'"[33]

## III. DISCUSSION

### A. <u>Class Action Tolling</u>

Under the class action tolling rule, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."[34] The Hawaii Supreme Court has adopted the class action tolling rule[35] and has also approved so-called "cross-jurisdictional tolling," under which the pendency of a class action in federal court tolls the statute of limitations for purposes of a subsequent state court action.[36]

---

[33] *Ariz. Elec. Power Coop., Inc. v. Berkeley,* 59 F.3d 988, 991 (9th Cir. 1995) (quoting *In re Kirkland,* 915 F.2d 1236, 1238 (9th Cir. 1990)) (internal citations omitted).

[34] *Patrickson v. Dole Food Co.,* 368 P.3d 959, 968 (Haw. 2015) (quoting *Am. Pipe & Const. Co. v. Utah,* 414 U.S. 538, 551 (1974)).

[35] *Levi v. Univ. of Hawaii,* 679 P.2d 129, 132 (Haw. 1984)

[36] *Patrickson,* 368 P.3d at 970.

10

## 1. __End of Class Action Tolling__

BANA claims that class action tolling ended on September 22, 2017, when the last plaintiff with prudential standing was dismissed from *Degamo*. The Plaintiffs argue that the statute of limitations still has not begun to run because the judgment in *Degamo* was vacated in part and no class certification motion has yet been denied.[37]

To decide when tolling ended, I must predict (1) whether the Hawaii Supreme Court would apply class action tolling where the named plaintiffs lacked standing to bring their claims, and (2) whether the court would continue to apply class action tolling after a putative class action is dismissed where the dismissal is appealed. There is no controlling Hawaii Supreme Court precedent on these questions.

---

[37] Compl. ¶ 12 n.1, ECF No. 1. After the Plaintiffs commenced this adversary proceeding, the Ninth Circuit Court of Appeals affirmed the district court's denial of the plaintiffs' bankruptcy trustees' ratification of the action, substitution of the bankruptcy trustees for the plaintiffs, and leave to file a second amended complaint. The court vacated the district court's denial of the motions to intervene by five members of the putative class and remanded the matter. *Degamo v. Bank of Am.*, 849 F. App'x 620 (9th Cir. 2021).

U.S. Bankruptcy Court - Hawaii  #21-90005  Dkt # 23  Filed  07/28/21  Page 11 of 44

Answering the first issue, I predict that the Hawaii Supreme Court would apply class action tolling where the named plaintiffs' lack of standing is not clear from the face of the complaint.

Courts have developed three different approaches to whether class action tolling applies where the named plaintiffs in the putative class action lack standing.[38] Courts following the first approach maintain that the filing of a class action does not satisfy *American Pipe*'s requirements when the putative class representative lacks standing.[39] Courts following the second approach reason that a suit on a claim that the claimant had no power to bring still functions "to give a defendant notice of whatever causes of action are asserted therein," so the named plaintiff's lack of standing has no effect.[40] Courts following the third, "middle-ground," approach will not apply class action tolling to later claims brought by putative class members

---

[38] 3 William B. Rubenstein, Newberg on Class Actions § 9:57.

[39] *Id.*

[40] *Id.* (quoting *Rose v. Ark. Valley Env't & Util. Auth.*, 562 F. Supp. 1180, 1193 (W.D. Mo. 1983)).

U.S. Bankruptcy Court - Hawaii  #21-90005  Dkt # 23  Filed  07/28/21  Page 12 of 44

if the class representative's lack of standing was clear from the pleadings. Courts employ the middle-ground approach for two reasons: one, if it is clear from the face of the complaint that the plaintiff lacks standing, the defendant may not be notified of the substantive claims against it, and two, "any putative class members who argue reliance upon that filing would be allowed, effectively, to sleep on their rights."[41]

Of the three approaches, I believe the middle-ground approach is most consistent with the Hawaii Supreme Court's holdings in *Patrickson* and *Levi*.[42] This approach strikes a balance between "[t]he primary purpose of a statute of limitations," which "is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend" and a major purpose of a class action suit, which is "to prevent multiplicity of actions, thereby preserving the economies of

---

[41] *Id.*

[42] *Patrickson v. Dole Food Co.*, 368 P.3d 959, 970 (Haw. 2015); *Levi v. Univ. of Hawaii*, 679 P.2d 129, 132 (Haw. 1984).

U.S. Bankruptcy Court - Hawaii   #21-90005   Dkt # 23   Filed  07/28/21   Page 13 of 44

time, effort and expense."[43]

A member of the proposed class in *Degamo* would not have known that the named plaintiffs lacked standing from the face of the complaint. Conversely, BANA received notice of the claims pending against it when plaintiffs with Article III standing and without any facially clear defects in prudential standing filed a complaint.[44] It is therefore fair to make BANA defend against these claims now. Thus, class action tolling did not end on September 7, 2012, when the last plaintiff with prudential standing was dismissed from *Degamo*.

In response to the second question, I predict that the Hawaii Supreme Court would end class action tolling after the trial court dismisses all claims in a non-certified putative class action, even if the dismissal is appealed.

In *Taylor v. United Parcel Service, Inc.*, the Fifth Circuit Court of

---

[43] *Levi*, 679 P.2d at 131-32.
[44] *See id.* at 132 ("The filing of a class action within the statute of limitations places a defendant on notice of the subject matter and size of the prospective litigation.").

14

Appeals held that tolling continues on appeal from a dismissal with prejudice only when a class has been certified.[45] The *Taylor* court emphasized "the distinction between putative members of an uncertified class and members of a certified class in determining the application of tolling principles."[46] Following *Taylor*, the Seventh Circuit Court of Appeals held in *Collins v. Village of Palatine* that "the limitations clock resumes when a *noncertified* class claim is dismissed with or without prejudice."[47] In *Bermudez Chavez v. Occidental Chemical Corporation*, the New York Court of Appeals also held that tolling ends upon clear dismissal of a putative class action.[48] It reasoned that, "[u]nder those circumstances, future plaintiffs are on notice that they must take steps to protect their rights because the litigation no longer compels the court to address class certification or the named plaintiffs to advance absent class members' interests. . . ."[49]

---

[45] 554 F.3d 510, 520-21 (5th Cir. 2008).

[46] *Id.* at 517.

[47] 875 F.3d 839, 845 (7th Cir. 2017) (emphasis added).

[48] 158 N.E.3d 93, 104 (N.Y. 2020).

[49] *Id.*

15

Because the Hawaii Supreme Court based its adoption of the class action tolling rule on federal law, I believe it likely that the Hawaii Supreme Court would adopt the majority rule among federal courts when determining when to end class action tolling. The rule has also found traction with state courts. Therefore, I predict that, in these circumstances, the Hawaii Supreme Court would hold the appeal of *Degamo* did not extend tolling because the district court never certified it as a class action. Based on both of my predictions of state law, I hold that tolling ended on March 14, 2019.

Assuming that the Plaintiffs' claims accrued on the date of the foreclosure sale, June 24, 2010, the statute of limitations ran for two years, two months, and thirteen days until it was tolled by the filing of *Degamo* on September 7, 2012. Applying class action tolling until *Degamo* was dismissed on March 14, 2019, the statute ran for another one year, ten months, and twenty-five days before the adversary complaint was filed on February 9, 2021. By this calculation, the statute of limitations ran for about

U.S. Bankruptcy Court - Hawaii  #21-90005  Dkt # 23  Filed  07/28/21  Page 16 of 44

four years and one month, well within the six-year limitations period

applicable to the Plaintiffs' wrongful foreclosure claims.

### 2. Scope of Tolling

BANA argues that the Plaintiffs' requests for restitution- and

rescission-based damages, additional allegations of BANA's wrongful

conduct in subparagraphs 61(a), (g), and (h) of Count I, and additional

allegations of wrongful conduct in paragraph 81 of Count II are outside the

scope of class action tolling. I agree in part and disagree in part for reasons

I will describe below.

### a. Measures of Damages

Federal courts have stressed that the class action tolling rule "does

not leave a plaintiff free to raise different or peripheral claims."[50] "[W]hen a

plaintiff invokes *American Pipe* in support of a separate lawsuit, the district

court should take care to ensure that the suit raises claims that 'concern the

---

[50] *Williams v. Boeing Co.*, 517 F.3d 1120, 1136 (9th Cir. 2008) (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352-53 (1983)) (cleaned up).

17

same evidence, memories, and witnesses as the subject matter of the original class suit,' so that 'the defendant will not be prejudiced.'"[51]

"There is no consensus on whether class action tolling is available only as to claims that are identical to those asserted in the initial putative class action."[52] For some courts, a common legal and factual nexus is sufficient to allow tolling.[53] In contrast, the Ninth Circuit Court of Appeals requires that the causes of action be "identical."[54] But there is no precedent from the Hawaii Supreme Court directly on point, and it is Hawaii state law that controls this inquiry.

I predict that the Hawaii Supreme Court would not require exact identity of claims and would instead consider whether "new claims" would relate back to the class action complaint if they were alleged in an

---

[51] *Crown, Cork & Seal*, 462 U.S. at 355 (Powell, J., concurring) (quoting *Am. Pipe*, 414 U.S. at 561 (Blackmun, J., concurring)).

[52] 1 McLaughlin on Class Actions § 3:15 (17th ed.).

[53] *Id.*

[54] *Card v. Duker*, 122 Fed. Appx. 347, 349 (9th Cir. 2005) ("The Supreme Court has thus not extended tolling due to class litigation beyond *American Pipe*'s narrow allowance for identical causes of action brought where the class was decertified.").

U.S. Bankruptcy Court - Hawaii   #21-90005   Dkt # 23   Filed  07/28/21   Page 18 of 44

amended pleading in the same action under Haw. R. Civ. P 15(c).[55] That rule seeks to balance the plaintiff's interest in having all of its claims against the defendant decided in a single action with the defendant's interest in receiving timely notice of the claims against it. These are the same factors that the Hawaii Supreme Court analyzed when it adopted the class action tolling rule.[56]

I disagree with BANA's assertion that the additional measures of damages requested by the Plaintiffs "would not relate back if alleged in a new pleading in the same action, let alone be tolled under *American Pipe*."[57] At most, the class action tolling rule requires the *claims* asserted in the original and subsequent actions to be the same; the *relief* requested need not be identical.[58]

---

[55] Haw. R. Civ. P. 15 allows an amended pleading to relate back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]"

[56] *Compare Mauian Hotel, Inc. v. Maui Pineapple Co.,* 481 P.2d 310, 314 (Haw. 1971) *with Levi v. Univ. of Hawaii*, 679 P.2d 129, 131-32 (Haw. 1984).

[57] BANA's Mot. Dismiss Compl. 14, ECF No. 6.

[58] *See Martell v. Trilogy Ltd.*, 872 F.2d 322, 326 (9th Cir. 1989) (interpreting Fed R.

The Hawaii Supreme Court's holding in *Mauian Hotel* is instructive. There, an insurer, on behalf of third-party plaintiff Napili-Kai, amended its answer to add a claim against another third-party plaintiff, Austin, Smith & Associates, Inc.[59] The amendment referred to some factual allegations in the earlier pleadings, but it "also contained additional allegations of fact to support its claim for [property damages]."[60] Austin, Smith & Associates asserted the statute of limitations as an affirmative defense and moved for summary judgment.[61] The lower court granted the motion and Napili-Kai appealed.[62]

To decide whether the new allegations "alter[ed] the fact situation to such an extent that the subsequent claim [arose] not out of the original

---

Civ. P. 15(c)); *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 736 (9th Cir. 1988) ("Under Rule 15, the only question is whether the later claims arise out of the conduct, transaction, or occurrence brought to the defendant's attention by the initial claim. When this is so[,] later-filed claims may relate back, even if they rest on a different legal theory . . . .").

[59] 481 P.2d at 312.

[60] *Id.* at 314.

[61] *Id.* at 312.

[62] *Id.*

U.S. Bankruptcy Court - Hawaii   #21-90005   Dkt # 23   Filed  07/28/21   Page 20 of 44

occurrence but instead out of another," [63] the *Mauian Hotel* court looked to the policy behind Hawaii's rule 15(c):

> Rule 15(c) assumes that pleading the occurrence will properly notify the other party of what evidence to gather. . . . [U]nder 15(c) *any amendment requiring additional evidentiary proof which was not reasonably foreseeable from the earlier pleadings* should be deemed to contain a new occurrence. If the rule were otherwise, parties may have to gather the evidence after it has dissipated and . . . this would directly contravene the purpose of the statute.[64]

The court found that "the subsequent claim [arose] out of a new occurrence and not the one originally described."[65] "[N]othing in the original pleadings even hinted at the subsequently alleged damage to Napili-Kai's property" and "the allegation of injury to the Napili-Kai Hotel raise[d] numerous possible evidentiary questions."[66] Therefore, the court held that the subsequent claim did not relate back under rule 15(c).

---

[63] *Id.*

[64] *Id.* (emphasis added).

[65] *Id.* at 314.

[66] *Id.*

21

Here, unlike in *Mauian Hotel*, the Plaintiffs' requests for damages measured on principles of restitution and rescission do not require additional evidence that was not reasonably foreseeable from the earlier pleadings. These "new" measures of damages may require the court to determine the market value of the Property when it was sold and the losses that Ms. Herrero and Mr. Mendoza suffered as a consequence of the foreclosure sale, including loss of use and loss of the Property's rental value. BANA received notice that these issues would arise in the *Degamo* trial from the First Amended Complaint, which sought various forms and calculations of damages, including increased residual debt, loss of net equity, loss of use, and loss of the properties' rental value.[67]

BANA compares this case to *Williams v. Boeing Co.*, where the Ninth Circuit Court of Appeals held that compensation discrimination claims in class action plaintiffs' second amended complaint would not relate back to

---

[67] *See* First Am. Compl. ¶¶ 48, 121, *Degamo v. Bank of Am., N.A.*, No. 1:13-cv-00141-JAO-KJM (D. Haw. Apr. 23, 2013), ECF No. 14.

their earlier claims of retaliation, hostile work environment, and denial of opportunities for promotion under Haw. R. Civ. P. 15(c)'s federal analogue. BANA argues that here, as in *Williams*, the Plaintiffs' claim "is a new legal theory depending on different facts, not a new legal theory depending on the same facts."[68] I also find the comparison useful, but I draw the opposite conclusion. Here, the new measures of damages sought by the Plaintiffs are based on the same facts and events alleged in *Degamo*.

In *Williams*, the plaintiffs would have had to amend their complaint "to include additional facts to support the compensation discrimination claim" and "different statistical evidence and witnesses would be used to prove the . . . claims because of the different processes [the defendant used] to make salary and promotion decisions."[69] As a contrast, *Williams* cited *Martell v. Trilogy Ltd.*, where the court held that the amended complaint related back under rule 15 where it added a new theory of recovery based

---

[68] BANA's Mot. Dismiss Compl. 15, ECF. No. 6 (citing *Williams*, 517 F.3d at 1133).
[69] *Williams*, 517 F.3d at 1133.

23

on facts alleged in the original complaint.[70]

The present scenario is more like *Martell* than *Williams*. Here, BANA received notice of the evidence it needed to gather when *Degamo* was filed.[71] It cannot assert that it was caught off-guard by the Plaintiffs' request for different measures of damages based on the same evidence.[72] Therefore, I determine that the statute of limitations on the Plaintiffs' requests for restitution and rescission was tolled during the *Degamo* class action to the same extent as their requests for other measures of damages.

        b.   **Additional Wrongful Conduct Alleged in Count I**

Count I of the adversary complaint alleges numerous defects in the

---

[70] *See id.* (citing *Martell*, 872 F.2d at 325-26).

[71] *See Mauian Hotel*, 481 P.2d 313 ("Rule 15(c) contemplates that once a party has been properly put on notice regarding what evidence to gather[,] the statute [of limitations] is satisfied, regardless of when the claim itself is asserted.").

[72] *See Martell*, 872 F.2d at 326 (quoting *Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir. 1944), *cert. denied*, 324 U.S. 878 (1945)) ("When a suit is filed in federal court under the Rules, the defendant knows that the whole transaction in it will be fully sifted, by amendment if need be, and that the form of action or the relief prayed . . . will not be confined to their first statement."); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (allowing amendment of the complaint under rule 15 where "the amendment would have done no more than state an alternative theory for recovery.").

U.S. Bankruptcy Court - Hawaii   #21-90005   Dkt # 23   Filed  07/28/21   Page 24 of 44

foreclosure sale conducted by BANA,[73] including defects that BANA contends were absent from the *Degamo* complaint. Specifically, BANA argues that the plaintiffs' allegations in subparagraph 61(a) that Ms. Herrero and Mr. Mendoza were not served with a notice of acceleration that complied with the mortgage, and their allegation in subparagraph 61(h) that the auction was postponed but there was no new posting on the property advertising a new auction date, are outside the scope of class action tolling and therefore time-barred.[74] I agree in part but disagree in part for reasons I will explain below.

I agree that the Plaintiffs' allegations of wrongful conduct regarding the notice of acceleration are not subject to class action tolling. The allegedly wrongful conduct asserted in *Degamo* began with the notice of sale. The notice of acceleration would have been issued before the notice of sale, i.e., before the events that *Degamo* was concerned with. The allegations

---

[73] Compl. ¶ 61, ECF No. 1.
[74] First Am. Mot. Dismiss Compl. 14, ECF No. 10.

U.S. Bankruptcy Court - Hawaii   #21-90005   Dkt # 23   Filed  07/28/21   Page 25 of 44

relating to the notice of acceleration "alter[] the fact situation to such an extent that the subsequent claim arises not out of the original occurrence but instead out of another."[75] Thus, the Plaintiffs' allegations of wrongful conduct regarding the notice of acceleration in subparagraph 61(a) of the complaint are not subject to class action tolling.

However, the same is not true of subparagraphs (g) and (h). These "new" allegations of wrongful conduct, specifically that there was no posting on the property advertising a new auction date, arise out of the same occurrence described in *Degamo*: the noticing of the foreclosure sale.[76] Accordingly, the Plaintiffs' allegations in subparagraph 61(h) were subject to class action tolling.

---

[75] *Mauian Hotel*, 481 P.2d at 314.
[76] *See* First Am. Compl. ¶ 14(c), *Degamo v. Bank of Am., N.A.*, No. 1:13-cv-00141-JAO-KJM (D. Haw. Apr. 23, 2013), ECF No. 14 (alleging that BANA's policies and practices, adopted to deter public participation and "chill" bid prices at nonjudicial foreclosure auctions, "included, but were not limited to . . . postponing auctions without publishing notices of the rescheduled auctions' new dates and times.").

26

### c. **Additional Wrongful Conduct Alleged in Count II**

As I will describe in the next section, the Plaintiffs' UDAP and UMOC claims are time-barred even with the application of class action tolling, so I need not consider whether their additional allegations of wrongful conduct in paragraph 81 of the complaint are subject to tolling.

### B. **Accrual and Timeliness of UDAP and UMOC Claims**

Under Haw. Rev. Stat. section 480–24, UDAP and UMOC claims are subject to a four-year statute of limitations. Here, the Plaintiffs' claims are timely only if I determine that they accrued on August 6, 2010, the date that the quitclaim deed to Fannie Mae was recorded.[77] Otherwise—whether they accrued on June 24, 2010, the date of the foreclosure sale; July 9, 2010, the date that the foreclosure affidavit was recorded; or July 27, 2010, the

---

[77] If the Plaintiffs' claims accrued on August 6, 2010, the statute of limitations would have run for two years and one month until *Degamo* was filed on September 7, 2012. After the district court dismissed *Degamo* on March 14, 2019, the statute ran for another one year, ten months, and twenty-five days before the Plaintiffs filed their adversary complaint on February 9, 2021. In total, the statute of limitations would have run for 1,459 days, or three years, eleven months, and twenty-five days, making the plaintiffs' claims timely by just a few days.

date that BANA executed the quitclaim deed to Fannie Mae—the claims

are time-barred. In the absence of direct guidance, I predict that the Hawaii

Supreme Court would hold that UDAP and UMOC claims based on a

wrongful foreclosure accrue, at the latest, on the date that the affidavit of

foreclosure is recorded.[78] I therefore conclude that the Plaintiffs' claims are

time-barred.

The Plaintiffs urge me to determine that their UDAP and UMOC

claims accrued on the date that the quitclaim deed to Fannie Mae was

recorded, as the last event in a "continuing violation" of Haw. Rev. Stat.

chapter 480. But the quitclaim conveyance cannot constitute a "continuing

violation" of Haw. Rev. Stat. chapter 48 because it did not cause any

additional harm.

Under Haw. Rev. Stat. section 480–24(a), "a cause of action for a

---

[78] BANA argues that UDAP and UMOC claims stemming from a wrongful foreclosure accrue on the date of the foreclosure sale, not the date that the foreclosure affidavit is recorded. However, I need not reach this issue because the Plaintiffs' claims would be time-barred if they accrued on either date.

U.S. Bankruptcy Court - Hawaii   #21-90005   Dkt # 23   Filed  07/28/21   Page 28 of 44

continuing violation is deemed to accrue at any time during the period of the violation." A "continuing violation" is a "continuing pattern of related improper conduct . . . ."[79] To allege a continuing violation under federal antitrust law in the Ninth Circuit,[80] a plaintiff must allege that a defendant completed an overt act during the limitations period that is (1) "a new and independent act that is not merely a reaffirmation of a previous act" and (2) "inflict[s] new and accumulating injury on the plaintiff."[81]

The damages asserted by the Plaintiffs are loss of monies invested in the Property, loss of market value, loss of use and rental value from the date that Ms. Herrero and Mr. Mendoza lost possession, and moving and rental expenses.[82] The Property was conveyed when the affidavit was

---

[79] *Au v. Republic State Mortg. Co.*, 2013 U.S. Dist. LEXIS 46722, at *45 n.24 (D. Haw. Mar. 29, 2013).

[80] Haw. Rev. Stat. section 480–3 directs that "[t]his chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes[.]"

[81] *Samsung Electronics Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014) (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)).

[82] Compl. ¶ 87, ECF No. 1. The complaint alleges that BANA engaged in various practices designed to "chill" bidding prices and achieve a high self-sale rate, including publication of false, deceptive, or misleading notices of sale. *See id.* ¶¶ 76-80, 83, 85. Any injury caused thereby accrued when the notice of sale was published or, at the latest,

29

recorded, and any loss of use and value stems from that conveyance.[83]
Ergo, the Plaintiffs' UDAP and UMOC claims accrued on that date. The
later execution and recordation of the deed did not result in any further
loss and therefore did not inflict a "new and accumulating injury" upon
Ms. Herrero and Mr. Mendoza.

Therefore, I hold that the Plaintiffs' UDAP and UMOC claims are
completely barred by the applicable statute of limitations.

C.    **Limitations Period for Quiet Title and Ejectment Claims**

The timeliness of the Plaintiffs' claims against the QTE Defendants
depends on which limitations period they are subject to under Hawaii
law.[84] MERS argues that quiet title and ejectment claims are subject to a six-

_____

when the property was conveyed.
    [83] *See In re Hoopai*, No. 04-02511, 2005 WL 1156091, at *4 (Bankr. D. Haw. Jan. 12,
2005) ("[T]itle passes in a non-judicial foreclosure sale when the affidavit is recorded,
not when the auction is held.").
    [84] The federal district court for this district has observed that "[i]t is not clear
what statute of limitations period applies to a quiet title claim arising from an alleged
wrongful foreclosure [under Hawaii law]." *Lynch v. Bank of N.Y. Mellon*, Civ. No. 17-
00195 LEK-RLP, 2019 WL 3624969, at *6 (D. Haw. July 30, 2018). The district court has
predicted that the Hawaii Supreme Court would apply a six-year statute of limitations
to quiet title claims. *Moore v. Kailua Kona Properties, LLC*, Civ. No. 18-00159 LEK-KSC,

U.S. Bankruptcy Court - Hawaii  #21-90005  Dkt # 23  Filed  07/28/21  Page 30 of 44

year limitations period under Haw. Rev. Stat. § 657–1. The Plaintiffs argue that their quiet title and ejectment claims are subject to either no statute of limitations at all or a twenty-year limitations period under Haw. Rev. Stat. section 657–31. If the Plaintiffs are correct, their claims are timely. If BANA is correct, the claims are time-barred.

For the reasons that follow, I conclude that any portion of the Plaintiffs' quiet title and ejectment claim seeking recovery of the land is subject to a twenty-year limitations period under Haw. Rev. Stat. section 657–31, while any claims for money damages, including lost rental value, are subject to a six-year limitations period under section 657–1(4). Thus, the Plaintiffs' request for return of the property is timely, but their request to recover its lost rental value is not.

First, I disagree with the Plaintiffs' argument that their quiet title and ejectment claims are not subject to a statute of limitations because the foreclosure sale was void and not voidable. Under Hawaii law, "a claim

---

2018 WL 2172489, at *2 (D. Haw. May 10, 2018).

31

that a deed is void is not subject to a statute of limitations."[85] But the most recent precedent from the Hawaii Supreme Court has referred to wrongful foreclosures as "voidable," not "void."[86] Therefore, I predict that the supreme court would hold that the sale of the Property, if in violation of the power of sale or Haw. Rev. Stat. section 667–5, was voidable.[87]

Second, different limitations periods should apply to the Plaintiffs' quiet title and ejectment claims based on the relief sought. Here, the Plaintiffs' claims have two basic elements: a request for title and possession of the Property, and a request for compensation for the loss of the Property and its use. I predict that the Hawaii Supreme Court would apply a twenty-year statute of limitations to the Plaintiffs' requests for return of the Property and a six-year statute of limitations to their requests for monetary

---

[85] *Hancock v. Kulana Partners, LLC*, 452 P.3d 371, 378 (2019).

[86] *Santiago v. Tanaka*, 366 P.3d 612, 633 (Haw. 2016) ("Where it is determined that the nonjudicial foreclosure of a property is wrongful, the sale of the property is invalid and ***voidable*** at the election of the mortgagor, who shall then regain title to and possession of the property.") (emphasis added).

[87] I recognize that the court recently took the question up on certiorari in *Delapinia v. Nationstar Mortgage, LLC*, 458 P.3d 929, 941 (Haw. App. 2020), *cert. granted*, SCWC-17-0000387, 2020 WL 2992104 (Haw. June 4, 2020).

compensation.

Under Hawaii law, "[t]he proper standard to determine the relevant limitations period is the nature of the claim or right, not the form of the pleading."[88] Different limitations periods may apply to different claims, even when they are stated in the same count and arise from the same transaction.[89]

The Hawaii Supreme Court "has often stated that 'the fundamental starting point for statutory interpretation is the language of the statute itself. . . . Where the statutory language is plain and unambiguous, [a court's] sole duty is to give effect to its plain and obvious meaning.'"[90]

Under Hawaii law, a twenty-year limitations period applies to

---

[88] *Au v. Au*, 626 P.2d 173, 177 (Haw. 1981).

[89] *See id.* ("Different causes of action arising from a single transaction may be plead together. However, where two or more causes of action arise from a single transaction, different statute[s] of limitations are applicable to the separate claims.") (internal citation omitted).

[90] *Schmidt v. Board of Directors of Ass'n of Apartment Owners of Marco Polo Apartments*, 836 P.2d 479, 482 (Haw. 1992) (quoting *In re Tax Appeal of Lower Mapunapuna Tenants Ass'n*, 828 P.2d 263, 266 (Haw. 1992)) (cleaned up).

33

"action[s] to recover possession of any lands, or make any entry thereon,"[91]

while a six-year limitations period applies to "[a]ctions for the recovery of

any debt founded upon any contract, obligation, or liability" and

"[p]ersonal actions of any nature whatsoever not specifically covered by

the laws of the State."[92] A personal action, or "action in personam," is one

"where the judgment will impose a personal liability or obligation and

does not affect the nature of the parties' interest in property."[93] Here, the

Plaintiffs' requests for return of the Property do not seek recovery of a debt

founded on a contract, obligation, or liability, as contemplated by section

657–1(1). And I will not apply section 657–1(4), which functions as a "catch-

all" for personal actions that do not fit into one of the other provisions of

section 657, when another statute of limitations is both more specific and

more relevant. Based on the plain language of the statutes, these requests

_____

[91] Haw. Rev. Stat. § 657–31.

[92] Haw. Rev. Stat. § 657–1(1), (4).

[93] *DW Aina Leʻa Development, LLC v. State Land Use Commission*, 477 P.3d 836, 846 (Haw. 2020) (quoting 1 Am. Jur. 2d Actions § 28 (2020)) (refusing to apply section 657–31 to regulatory takings claims "designed to secure compensation," but not affecting the defendant's interest in the property, and instead applying section 657–1(4)).

34

for relief would fit most closely within section 657–31.

The ICA reached a similar conclusion regarding claims for foreclosure in *Bowler v. Christiana Trust*. There, the court rejected the argument that a foreclosure action was "'of like character' to '[a]ctions for the recovery of any debt founded upon any contract, obligation, or liability,'"[94] stating that "[t]he supreme court has long distinguished an action to recover a debt or enforce a promissory note from an action to foreclose a mortgage."[95] Observing that distinction, the court held that a foreclosure action was more similar to an "action to recover possession of any lands, or make any entry thereon" and therefore subject to a twenty-year limitations period under section 657–31.[96]

*Bowler* is not a state supreme court case and does not concern wrongful foreclosure claims, but it is persuasive as a decision of the state's

---

[94] No. CAAP-16-0000728, 426 P.3d 459, 2018 WL 4659562, at *5 (Haw. App. Sep. 28, 2018).

[95] *Id.*

[96] *Id.*

35

intermediate appellate court. The *Bowler* court also supported its decision with a detailed analysis of Hawaii Supreme Court precedent.[97] It stated that "the determinative issue is not the method of the foreclosure or the purpose of the security interest, but rather the fact that a mortgage is a conveyance of a real property interest, which allows the mortgagee to sell and take possession of the property."[98] The *Bowler* court's reasoning also applies to the Plaintiffs' quiet title and ejectment claims, which challenge a conveyance of a real property interest and seek to take possession of the property in question. And, if claims for foreclosure are subject to a twenty-year limitations period as determined in *Bowler*, the same must be true of claims seeking to undo a foreclosure.

But, because of the distinction between an action to recover a debt and an action to recover land, I will apply the six-year statute of limitations

---

[97] *See Bowler*, 2018 WL 4659562, at *5-8 (Haw. App. 2018) (discussing *Hilo v. Liliuokalani*, 15 Haw. 507 (Haw. Terr. 1904); *Kipahulu Sugar Co. v. Nakila*, 20 Haw. 620, 621 (Haw. Terr. 1911)).

[98] *Id.* at *8.

36

to the Plaintiffs' requests for money damages.

As the Hawaii Supreme Court has held, a mortgagee can foreclose on a mortgage if within the statute of limitations for real actions, but cannot recover a money judgment on the underlying note.[99] The mortgagee may not collect a deficiency judgment in those circumstances, either, illustrating that the only timely claim is against the land.[100] Here, similarly, the Plaintiffs seek lost rent as damages for their quiet title claims. The Plaintiffs' request for money damages is therefore a personal action that does not fit within the provisions of subsections 657–1(1) through (3). Thus, I will apply Haw. Rev. Stat. section 657–1(4) to these requests for relief.

---

[99] *Kipahulu Sugar Co.*, 20 Haw. at 622 ("In the case at bar the statute has run against the note, but the period prescribed for the recovery of land has not expired. The plaintiff was, therefore, entitled to a decree of foreclosure."); *Hilo v. Liliuokalani*, 15 Haw. at 508 ("Actions on the notes were of course barred long ago by the statute . . . . But that did not bar the remedy against the land."); *see also Maile v. Carter*, 17 Haw. 49, 52 (Haw. Terr. 1905) (citing *Campbell v. Kamaiopili*, 3 Haw. 477 (Haw. Kingdom 1872)); *Castle v. Smith*, 17 Haw. 32 (Haw. Terr. 1905); *Kaikainahaole v. Allen*, 14 Haw. 527 (Haw. Terr. 1902);.

[100] *Kipahulu Sugar Co.*, 20 Haw. at 622 ("To allow a deficiency judgment would virtually be to enforce payment of the defendant's note, action upon which is, concededly, barred.").

U.S. Bankruptcy Court - Hawaii   #21-90005   Dkt # 23   Filed  07/28/21   Page 37 of 44

In summary, I conclude that the Plaintiffs' requests for money damages on their quiet title and ejectment claims are time-barred. As described above, their requests for recovery of title and possession are subject to a twenty-year statute of limitations and are therefore timely.

D.     **The "Tender Rule"**

BANA argues that the Plaintiffs have not sufficiently alleged that they can tender the amount of indebtedness on the mortgage. The Plaintiffs dispute that Hawaii law requires any allegation of proof of ability to tender, but allege that, given the sums they are owed in damages, they will be able to make tender if required to do so by law.[101] Based on this allegation, I decline to dismiss the Plaintiffs' quiet title and ejectment claims for failure to satisfy the tender rule.

In an action to quiet title under Hawaii law, a plaintiff "must at least prove that he has a substantial interest in the property and that his title is superior to that of the defendants. The tender rule requires a[] borrower, in

---

[101] Compl. ¶ 69, ECF No. 1.

38

bringing a quiet title action, to allege that he has paid, or is able to tender, the amounts owed."[102] In *Delapinia*, the ICA affirmed the circuit court's dismissal of the Plaintiffs' quiet title claim because they "did not 'allege that they have paid or are able to tender the amount of indebtedness that would be due under the mortgage[.]'"[103]

The Plaintiffs argue that *Delapinia*'s precedential value is uncertain because the Hawaii Supreme Court has taken certiorari. But *Delapinia*, as a decision of Hawaii's intermediate appellate court, is currently controlling state law. However, even if the tender rule applies, I determine that the allegations of the adversary complaint are sufficient to defeat a motion for summary judgment. For purposes of this motion, I must accept as true the Plaintiffs' statement that they will be able to make tender by offsetting their claims for damages against the amount of their indebtedness on the

---

[102] *Delapinia*, 458 P.3d at 939 (internal citations omitted).
[103] *Id.*

U.S. Bankruptcy Court - Hawaii   #21-90005   Dkt # 23   Filed  07/28/21   Page 39 of 44

mortgage. The Plaintiffs do not need to allege that they can pay the full

amount owing in cash.

E.  **Defendant MERS Should Be Dismissed**

MERS points out that, on March 15, 2021, a Release of Mortgage was

recorded, acknowledging "full payment and satisfaction" and discharging

the mortgage held by MERS.[104] Therefore, MERS argues, the Plaintiffs

cannot state a quiet title and ejectment claim against it. The Plaintiffs did

not contest this allegation in their opposition. I hold that because MERS no

longer claims an interest in the property, the Plaintiffs cannot state a claim

against MERS on which relief can be granted.

The Release of Mortgage, recorded in the State of Hawaii Bureau of

Conveyances as Doc. No. A-77440970, is a matter of public record of which

I may properly take judicial notice.[105] The release demonstrates that MERS

---

[104] First Am. Mot. Dismiss Compl. 17, ECF No. 10.
[105] *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (quoting *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

40

no longer has an interest in the property. Therefore, the Plaintiffs' claims against MERS should be dismissed.

F. **Leave to Amend**

Fed. R. Civ. P. 15 applies in adversary proceedings through Fed. R. Bankr. P. 7015. Under rule 15, "'after a brief period in which a party may amend as of right,' leave to amend lies 'within the sound discretion of the trial court.'"[106] The Plaintiffs have not requested leave to amend.

The Ninth Circuit has stated that "in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"[107] While "leave to amend 'shall be freely given when justice so requires,' . . . futile amendments should not be permitted."[108] Here,

---

[106] *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185-86 (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).
[107] *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).
[108] *Klamath-Lake Pharma. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292-93 (9th Cir. 1983) (quoting Fed. R. Civ. P. 15(a)).

41

amendment of the complaint would be futile because the pleading could not be cured by the allegation of other facts. Therefore, I will deny leave to amend the complaint as to claims, measures of damages, and allegations of wrongful conduct dismissed by this order.

Absent tolling, all of the Plaintiffs' monetary claims are undoubtedly time-barred. The only type of tolling that the Plaintiffs have mentioned is class action tolling, and it seems highly unlikely that any other tolling doctrine could apply. Thus, granting leave to amend to add facts that render the Plaintiffs' claims in subparagraph 61(a) timely would be futile.

The same is true of the Plaintiffs' UDAP and UMOC claims and portions of the Plaintiffs' quiet title and ejectment claims. A four-year limitations period clearly applies to the Plaintiffs' UDAP and UMOC claims under Haw. Rev. Stat. section 480–24. No other facts or arguments could possibly justify the application of a longer period. Thus, the Plaintiffs' claims in paragraph 81, which are not subject to class action tolling, are indisputably time-barred. Likewise, because they were not

U.S. Bankruptcy Court - Hawaii   #21-90005   Dkt # 23   Filed  07/28/21   Page 42 of 44

subject to class action tolling, the Plaintiffs' quiet title and ejectment claims against the remaining defendants are also time-barred to the extent that they seek money damages. Lastly, MERS is no longer a proper defendant to the Plaintiffs' quiet title and ejectment claims because the mortgage has been released; no amendment can cure that.

Leave to amend is therefore denied.

## III.   CONCLUSION

In conclusion, I will GRANT the Defendants' motion in part. I hereby DISMISS the Plaintiffs' additional allegations of wrongful conduct in Count I, subparagraph 61(a); all of the Plaintiffs' UDAP claims in Count II; the Plaintiffs' requests for money damages on their quiet title and ejectment claims in Count III; and all of the Plaintiffs' claims against MERS, without leave to amend.

I will DENY the motion as to all other elements of the complaint, including, but not limited to, the Plaintiffs' requests for restitution, rescissory damages, or other equitable damages; the allegations in

43

subparagraph 61(h); and the Plaintiffs' claims for recovery of the Property against the remaining QTE Defendants.

**END OF ORDER**

44